MICHAEL G. KENYON, APPELLEE, v. STEPHEN K. LARSEN, THIRD-PARTY PLAINTIFF, APPELLEE, v. WALT DEYLE, DOING BUSINESS AS WALT DEYLE AGENCY, THIRD-PARTY DEFENDANT, APPELLANT.

286 N. W. 2d 759

Filed January 3, 1980. No. 42529.

Wagoner & Wagoner, for appellant.

Donald J. Loftus, P. C., for appellee Kenyon.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This action was commenced in 1975 by the plaintiff, Michael G. Kenyon, to recover the damages he sustained on June 16, 1971, in a collision between a motorcycle on which he was a passenger and a 1966 Chevrolet automobile owned and operated by the defendant, Stephen K. Larsen. In 1976 the defendant filed a third-party petition against Walt Deyle, alleging that the third-party defendant Deyle had breached an oral agreement to obtain automobile liability insurance from the Great Central Insurance Company for Larsen.

On December 7, 1976, the defendant Larsen filed a petition in bankruptcy with Kenyon listed as an unsecured creditor. Larsen was subsequently adjudicated a bankrupt and a discharge was entered on

March 15, 1977. The trustee in bankruptcy disclaimed any interest in the claim of Larsen against Deyle. On May 20, 1977, the bankruptcy court authorized Kenyon to proceed with the litigation against Larsen and Deyle, but enjoined Kenyon from levying upon any asset of Larsen except as involved in the claim of Larsen against Deyle. A stay which the trial court had ordered pending the bankruptcy was dissolved, and the trial court ordered the claim of Kenyon against Larsen be tried separately from the claim of Larsen against Deyle. The claim of Kenyon against Larsen then proceeded to trial.

The trial of the claim of Kenyon against Larsen resulted in a judgment in favor of Kenyon in the amount of $20,000 and costs on November 1, 1977. The judgment was affirmed by this court on June 27, 1978.

On December 2, 1977, Larsen assigned his claim against Deyle to Kenyon, reserving, however, any amounts expended by him as attorney's fees in the Kenyon v. Larsen case and the Larsen v. Deyle case which might be recovered as damages in the case against Deyle. Upon the motion of Kenyon, the trial court substituted Kenyon as the third-party plaintiff in the action against Deyle.

The amended petition filed by Kenyon alleged two theories of recovery. The petition alleged that Deyle had agreed to obtain automobile liability insurance for Larsen but negligently failed to obtain insurance for him, and that Deyle had breached an agreement to obtain automobile liability insurance for Larsen. The case was submitted to the jury upon both theories. The jury returned a verdict for the plaintiff Kenyon in the amount of $23,576.85 on the theory of negligence. The defendant Deyle has appealed. There is no cross appeal.

The defendant Deyle contends the trial court erred in substituting Kenyon as the third-party plaintiff; in failing to require Kenyon to elect upon which theory

he was proceeding; in submitting the breach of contract theory of recovery to the jury; in overruling the defendant's motion for a mistrial; and in failing to limit the plaintiff's recovery to the limits of the policy which the defendant could have obtained for Larsen.

The defendant Deyle contends that Kenyon should not have been substituted as the third-party plaintiff in the claim against Deyle because the assignment from Larsen to Kenyon was conditional. In the assignment Larsen reserved an amount equal to the amount he had expended for attorney's fees. The defendant argues that because the assignment was conditional, Larsen retained an interest in the claim, was the real party in interest, and the action should have proceeded in his name. There are several reasons why this contention cannot prevail.

Kenyon was a judgment creditor of Larsen. Although Larsen had been adjudged to be a bankrupt and a discharge had been entered, the trustee disclaimed any interest in the claim against Deyle and the bankruptcy court authorized Kenyon to proceed on the claim of Larsen against Deyle. Although the claim of Larsen against Deyle was personal to Larsen and could not be enforced in a direct action by Kenyon against Deyle, it could be reached by Kenyon in a proceeding in aid of execution. See, Peak v. Bosse, 202 Neb. 1, 272 N. W. 2d 750; Royal Ind. Co. v. Aetna Cas. & Sur. Co., 193 Neb. 752, 229 N. W. 2d 183; § 25-1564, R. R. S. 1943; Emerson-Brantingham Implement Co. v. Hallgren, 146 Neb. 530, 20 N. W. 2d 501; Steffens v. American Standard Insurance Co. of Wis., 181 N. W. 2d 174 (Iowa, 1970); 12 Couch on Insurance (2d Ed., 1964), § 45:769, p. 668.

In effect this is what the bankruptcy court did in authorizing Kenyon to proceed against Deyle on Larsen's claim against Deyle. The proceeding was similar to a proceeding in aid of execution with Kenyon, as a judgment creditor, acquiring the right to pro-

ceed on the Larsen claim.

The question as to who was the proper party plaintiff was settled by agreement of the parties before the trial commenced. The record recites that the parties agreed, before the trial started, that the court would advise the jury the case was being brought by Kenyon and Larsen as plaintiffs, but that any recovery could be based only on whatever rights Larsen had against Deyle. This settled any controversy there may have been as to who was the proper party plaintiff. The trial court followed this theory in stating the issues in instruction No. 2, and the defendant Deyle made no objection to that part of the instruction. The trial court did not err in substituting Kenyon as the third-party plaintiff, and the defendant can not now claim that the trial court erred in advising the jury that the action was brought by Kenyon and Larsen as plaintiffs.

The verdict of the jury cured any error in submitting the contract theory of recovery to the jury.

The trial court denied the defendant Deyle's motion to require the plaintiff to elect one of the two theories of recovery pleaded in the petition. Pleading alternative theories of recovery is permitted in this state and, ordinarily, an election between theories of recovery will not be required unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other. Asher v. Coca Cola Bottling Co., 172 Neb. 855, 112 N. W. 2d 252.

In this case both theories of recovery depended upon proof of a promise by Deyle to obtain automobile liability insurance for Larsen. The record does not disclose that any substantial prejudice to the defendant resulted from submitting both theories to the jury. We conclude there was no error in doing so.

The following occurred during the reading of a deposition to the jury by plaintiff's counsel: "THE

COURT: Mr. Loftus, you may continue the reading of the deposition now. MR. LOFTUS: For the record, I would like the record to show this will only be about two or three pages I would like to read into the record. On the insistence of Mr. Wagoner and Mr. Deyle, I'm going to be required to read this whole deposition in the record. MR. WAGONER: I would like the record to reflect the reasons of my position, I want it read, in order to not disrupt the continuity of the testimony of Mr. Graves and the jury will have the entire testimony in front of them.''

After reading several pages of deposition testimony, plaintiff's counsel stated: ''MR. LOFTUS: Do you feel that is all essential, Mr. Wagoner?''

Defendant's counsel then approached the bench, the jury was excused, and the defendant moved for a mistrial. Argument was had on the motion and the trial court reserved ruling on the motion. The jury was recalled and the trial court made the following statement: ''THE COURT: During your absence, the attention of the Court was brought to certain remarks made by Mr. Loftus from the witness chair when he was reading the deposition or prior thereto about the fact that the deposition was being read in full at the request of the other party. Although this may be in part truthful, his statement was improper. The ruling of the court was — preceding that, was that in the offering of depositions, the offering party may read such portion as he desires, but if the opposite party wants more portions read, then the offering party shall read the entire deposition if necessary and its the condition, if Mr. Loftus chooses to use the deposition, then to read the entire deposition, it's not his choice. Therefore, the statement contributing the time involved or the loss of time to the other side is improper. I instruct the jury to disregard or place any blame based upon those statements, and I would like you to disregard as if those statements had not been made at all so

that we can continue with this trial because the alternative is to stop the trial at this point. You may continue.''

At the close of the plaintiff's evidence the motion for a mistrial was overruled.

The procedure to be followed had been settled by a ruling of the court made just before the reading of the deposition commenced. If the plaintiff wanted to object to that ruling the objection should have been made out of the hearing of the jury. Plaintiff's counsel knew what the ruling was, and his remarks could have had no purpose other than to discredit the defendant and his counsel before the jury. The remarks were improper and demonstrated a lack of professional demeanor.

The trial court has broad discretion over the general conduct of a trial. Cardenas v. Peterson Bean Co., 180 Neb. 605, 144 N. W. 2d 154. A motion for a mistrial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed in the absence of a showing of an abuse of discretion. Regier v. Nebraska P. P. Dist., 189 Neb. 56, 199 N. W. 2d 742.

The trial court gave thorough consideration to the motion for a mistrial and concluded that it should be overruled. We are reluctant to disturb the ruling of the trial court and, upon consideration of the entire record, we determine that the ruling was not erroneous.

The defendant contends that the plaintiff's recovery should have been restricted to the limits of a policy which the defendant could have obtained for Larsen.

Larsen testified that he went to the Deyle Agency around the noon hour during the latter part of April 1971, to obtain insurance for the 1966 automobile. At the agency he talked with Jean Hesser, an employee of the agency, and advised her that he owned the 1966 automobile and requested ''the same liability

coverage that my father's policy carried." On cross-examination Larsen admitted that he did not discuss any precise amount of coverage and "didn't know the coverage as to numbers to me for correct coverage that way." In a previous deposition Larsen testified with regard to limits requested, "Oh, I don't know what they call, 15, 25, or something, coverage. * * * This, I really — this I don't really know. The limits which were previously carried on the previous policies. * * * The policies through my father." Larsen testified that before he left the agency Mrs. Hesser assured him that he had insurance coverage which was effective immediately.

Matt Weides, a friend of Larsen who had accompanied him to the Deyle agency, testified that Larsen asked for the same coverage that Larsen's father had on his car. Weides had previously testified by deposition that Larsen had asked that the insurance be "changed over" so that he would have the same coverage he had previously had on a motorcycle.

Mrs. Hesser testified that she had no recollection of a conversation with Larsen at the Deyle agency in 1971. However, on April 30, 1971, she filled out a request for endorsement form indicating that the 1966 automobile should be substituted for a 1963 automobile on a garage liability policy issued to Elmer Larsen, Stephen Larsen's father.

Elmer Larsen operated a service station and garage and had purchased a garage liability policy from Deyle. This policy covered automobiles owned by Elmer Larsen but could not cover the 1966 automobile because it was owned by his son. The garage policy did not require a schedule or listing of covered automobiles, so the change of endorsement form was merely for information purposes.

The evidence would permit a finding that Deyle, through his agent Mrs. Hesser, had assured Larsen that he had insurance on the 1966 automobile, but in

fact no insurance existed. The jury could find Deyle was negligent in attempting to afford coverage for the 1966 automobile under the garage policy, in failing to attempt to obtain proper coverage for the 1966 automobile, and in not advising Larsen that insurance coverage had not been obtained.

It was the duty of Larsen to advise Deyle as to the insurance he wanted, including the limits of the policy to be issued. Collegiate Mfg. Co. v. McDowell's Agency, Inc., 200 N. W. 2d 854 (Iowa, 1972).

The evidence shows that the policy which had covered the motorcycle provided limits of $10,000 per person for personal liability. A policy purchased from Deyle on September 30, 1971, insuring a 1955 automobile owned by Stephen Larsen provided the same limits. The record shows that Deyle could not have procured a policy from Great Central insuring an automobile owned by Stephen Larsen with personal liability limits in excess of $10,000 per person because of Larsen's age and status.

It is fundamental that there be causation between the negligence of the insurance broker or agent and the damage to his principal. Pacific Dredging Co. v. Hurley, 65 Wash. 2d 394, 397 P. 2d 819. The measure of damages for the loss caused by the negligence of the broker is the amount that would have been due under the policy if it had been obtained by the broker. 43 Am. Jur. 2d., Insurance, § 174, p. 230.

The recovery in this case should have been limited to the amount which would have been due under an automobile liability insurance policy with limits of $10,000 per person, plus the reasonable cost of defense in the action of Kenyon v. Larsen. The judgment is reversed and the cause remanded with directions to enter a judgment for the plaintiff Kenyon against the defendant Deyle in the amount of $10,000 and grant a new trial upon the issue of the reasonable cost of defense in the action of Kenyon v. Larsen.

REVERSED AND REMANDED WITH DIRECTIONS.