IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

HUMBOLDT SPECIALTY MFG. CO. V. VANDERHEIDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

HUMBOLDT SPECIALTY MANUFACTURING COMPANY, A NEBRASKA CORPORATION,
APPELLEE AND CROSS-APPELLANT,
V.
JAMES A. VANDERHEIDEN, APPELLEE AND CROSS-APPELLEE, AND MARKETING MANAGEMENT
& ASSOCIATES, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE.

Filed July 30, 2013.    No. A-12-850.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Stephen R.W. Twiss, of Sampson, Curry & Twiss, P.C., for appellant and for appellee James A. Vanderheiden.

Allan A. Armbruster, Jr., of Armbruster Law Office, for appellee Humboldt Specialty Manufacturing Company.

PIRTLE and RIEDMANN, Judges, and MULLEN, District Judge, Retired.

PIRTLE, Judge.

INTRODUCTION

In this breach of contract case, the district court for Douglas County previously granted summary judgment in favor of Humboldt Specialty Manufacturing Company (Humboldt) and James A. Vanderheiden. Marketing Management & Associates, Inc. (MMA), filed a motion to alter or amend judgment, which was overruled. MMA now appeals the court's ruling in favor of Humboldt. Humboldt cross-appeals the summary judgment in favor of Vanderheiden and requests additional damages for storage costs and prejudgment interest.

For the reasons that follow, we affirm the district court's summary judgment in favor of Vanderheiden, reverse the grant of summary judgment in favor of Humboldt, and remand the cause for further proceedings consistent with this opinion.

BACKGROUND

In February 2007, James H. Keene III, the president of Humboldt, and Vanderheiden, the president of MMA, met to discuss an agreement under which Humboldt would manufacture products for MMA. The memorandum of understanding (MOU) was drafted by Keene on February 26 and executed by Vanderheiden on March 2. Humboldt was to sell finished product and raw materials to MMA. MMA agreed to purchase raw materials from Humboldt if its purchase orders did not use up the supply of raw materials Humboldt purchased for the manufacture of MMA's finished product. MMA issued purchase orders for finished product until July 7, 2010. MMA sent purchase orders for raw materials on multiple occasions through March 9, 2011, and such orders were filled by Humboldt.

On March 30, 2011, Humboldt sent "Invoice No. 30823" to MMA in the amount of $31,031.67 for all of the raw materials that had been purchased for the manufacture of the finished product and had not been used at that point. The raw materials were stored by Humboldt, and Humboldt incurred a monthly cost for such storage. MMA did not pay Humboldt the amount listed in "Invoice No. 30823" and did not receive the raw materials listed in the invoice.

On May 18, 2011, Vanderheiden met with Keene and said that he was making his own finished products, buying raw materials from Humboldt's supplier, and that he would buy Humboldt's raw materials as needed. Keene sent a letter requesting shipping instructions and payment.

The purchasing manager for Humboldt authorized MMA to purchase raw materials from Humboldt on June 13, 2011. The letter stated that if the item requested was listed on the invoice sent to MMA, MMA could order it for the price listed on the invoice. On June 13, 14, and 15, MMA issued three separate purchase orders for raw materials which Humboldt refused. Humboldt terminated the MOU on June 15.

Humboldt filed a complaint seeking damages arising from an alleged breach of contract, stating that MMA failed to perform its contractual obligation to buy the remaining, customer-specific, raw materials at the time it stopped using Humboldt as a manufacturer of finished product. Humboldt's complaint requested monetary damages in the amount of $31,031.67, prejudgment interest, and costs incurred for storing the raw materials.

MMA filed a counterclaim alleging Humboldt manufactured products that did not comply with the material specifications provided to them and requested damages of $15,195.05 plus consequential damages. MMA also alleged Humboldt sold raw materials to MMA that did not comply with the material specifications provided by MMA and requested damages of $1,029.57.

On February 10, 2012, Humboldt filed a motion for summary judgment, and on February 24, MMA filed a motion for summary judgment. Vanderheiden filed a motion for summary judgment on February 24. A hearing was held on the motions on April 4.

The district court sustained Vanderheiden's motion for summary judgment and dismissed the complaint against him. The district court overruled the motion for summary judgment filed by MMA, dismissed MMA's counterclaim with prejudice, and entered judgment in favor of Humboldt and against MMA in the amount of $27,937.17 plus costs.

On August 20, 2012, MMA filed a motion to alter or amend judgment. The motion was overruled and denied on September 5. MMA filed its notice of appeal on September 17.

## ASSIGNMENTS OF ERROR

MMA alleges the district court erred in granting Humboldt's motion for summary judgment and awarding Humboldt $27,937.17 in damages. MMA further alleges the district court erred in overruling MMA's motion for summary judgment and dismissing MMA's counterclaim. MMA also alleges the district court erred in overruling and denying MMA's motion to alter or amend judgment.

Humboldt alleges on cross-appeal that the court erred in referring to extrinsic evidence to interpret the agreement and in granting summary judgment in favor of Vanderheiden. Humboldt also alleges the court erred in denying Humboldt prejudgment interest and failing to award Humboldt the costs incurred for storing the raw materials at issue in this case.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000). On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Id.*

## ANALYSIS

*Motion for Summary Judgment as to Vanderheiden.*

Humboldt alleges on cross-appeal that the trial court erred when it found Humboldt knew it was contracting with a corporation at the time of the agreement. The order finds that although the agreement was signed by the presidents of MMA and Humboldt, the parties intended to bind their companies, not themselves.

Humboldt argues that absent the abbreviations "corp., inc., co.," or the like, Humboldt had no reason to believe MMA was a corporation, and that Vanderheiden did not disclose his agency relationship. See brief for appellee Humboldt on cross-appeal at 28. Humboldt argues that by not including the appropriate sign of the corporation, it is a violation of Neb. Rev. Stat. § 21-2028 (Cum. Supp. 2012), which exists "to give notice to persons contracting with a corporation that the owners or investors are not responsible for the corporation's debts or obligations." See brief for appellee Humboldt on cross-appeal at 28.

The court sustained Vanderheiden's motion for summary judgment, finding that "reasonable minds could not differ and, therefore, there is no material issue of fact that while Vanderheiden signed the memo without identifying himself as the president[,] it was the intention of the parties that this was an agreement between the two corporations and not . . . Vanderheiden and . . . Keene personally."

The general rule is that an agent, acting for a disclosed principal, is not liable for the principal's contract. *RSUI Indemnity Co. v. Bacon*, 282 Neb. 436, 810 N.W.2d 666 (2011), citing *Broad v. Randy Bauer Ins. Agency*, 275 Neb. 788, 749 N.W.2d 478 (2008). An agent can become

personally liable if the agent purports to bind himself or herself, or has otherwise bound himself or herself, to performance of the contract. *Id.* Stated another way, an agent for a disclosed principal is not liable on the contract in the absence of some other agreement to the contrary or other circumstances showing that the agent has expressly or impliedly incurred or intended to incur personal responsibility. *Id.*

Upon our review of the record in this case, we find there was no evidence to indicate Vanderheiden signed this agreement personally or made any attempt to show he intended to incur personal responsibility for the agreement. Rather, he was operating at all times as a representative of the company. The agreement was drafted by Keene and addressed to "James Vanderheiden[,] Marketing Management & Assoc." Further, the parties to the agreement are listed throughout the MOU as "MMA" and "HSMC." Each invoice was billed to the company, and the products were shipped to MMA, not Vanderheiden. It is clear that Vanderheiden is signing on behalf of one of the parties to be bound and that the intention of the two men was to enter into a business relationship on behalf of their respective companies. The trial court did not err in sustaining Vanderheiden's motion for summary judgment, and the order as to Vanderheiden is affirmed.

*Application of Nebraska's Uniform Commercial Code.*

MMA alleges the trial court erred when it failed to analyze whether Nebraska's Uniform Commercial Code (UCC) applied to these facts and failed to apply the terms of the UCC when interpreting the MOU.

Humboldt alleges the UCC may not apply because this agreement between the parties was a contract primarily for services, rather than goods, as Humboldt manufactured finished product from raw materials for MMA.

Neb. U.C.C. § 2-105 (Reissue 2001) defines "goods" to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for the sale other than the money in which the price is to be paid, investment securities (article 8) and things in action."

Humboldt and MMA agreed in the MOU to the sale of manufactured finished products, and such manufactured products fall under the definition of "goods" in § 2-105. The parties also agreed to the sale of raw materials in the MOU, and such materials are also "goods" under the UCC definition. Whether the UCC applied to this case was a question of law, and we find, upon review, that the UCC does apply to the agreement between the parties.

MMA alleges the trial court erred in not considering the parties' course of performance, as defined by the UCC, when determining that Humboldt was entitled to summary judgment. MMA also asserts that Humboldt failed to mitigate its damages when it made no effort to sell the raw materials to any other party after MMA's alleged breach.

Having determined the UCC applies to the MOU as a matter of law, we find the trial court erred in not considering the parties' course of performance when analyzing the agreement prior to granting Humboldt's motion for summary judgment.

In addition, it is the seller's burden to prove it made efforts to resell the goods identified in the contract at a reasonable price or the circumstances reasonably indicate that such efforts would be unavailing. Neb. U.C.C. § 2-709 (Reissue 2001); *Hammond v. Streeter*, 225 Neb. 491,

406 N.W.2d 633 (1987). The record before us is void of any evidence that Humboldt attempted to resell the raw materials. This is a factor which should have been considered by the trial court had it applied the provisions of the UCC.

As a result, we find that the trial court erred in not considering the applicable provisions of the UCC and that there was a genuine issue of material fact with regard to the terms of the contract. Therefore, we reverse, and remand for further proceedings.

*MMA's Counterclaim.*

MMA's counterclaim, filed September 26, 2011, alleges two causes of action: (1) that the finished products received from Humboldt did not meet MMA's desired specifications and (2) that the raw materials did not meet MMA's desired specifications.

Humboldt filed a motion for summary judgment on February 10, 2012. MMA and Vanderheiden filed motions for summary judgment on February 27. Both of these motions included a "Notice of Hearing" noting that they would be heard immediately following the motion for summary judgment filed by Humboldt at the scheduled hearing on April 4, 2012.

At the beginning of the hearing on April 4, 2012, the trial judge stated, "We're here on motions for summary judgment filed by the plaintiff and by the defendant." The parties were given the opportunity to present evidence, and there was no mention of the counterclaim by the judge or either party. MMA requested that the court take judicial notice of the complaint filed, as well as the answers of MMA and Vanderheiden, and the only arguments made were in response to Humboldt's complaint.

Following the hearing on the parties' motions for summary judgment, the trial court's order dismissed the counterclaim with prejudice.

MMA argues that it was not on notice the counterclaim would be at issue and that it did not present evidence accordingly. Humboldt argues MMA's motion for summary judgment is very broad and requests such other and further relief as the court deemed just and/or equitable.

Upon our review of the evidence, we find that there was no notice to any party stating the counterclaim was at issue at the hearing on April 4, 2012, and that none of the parties referred to or presented evidence with regard to the counterclaim during the hearing. There is a question of material fact as to whether the counterclaim was at issue at the hearing, and we find it was error for the trial court to dismiss the counterclaim with prejudice at that time. Therefore, we reverse the trial court's dismissal of the counterclaim and remand the cause to the trial court for further proceedings consistent with this opinion.

*Damages.*

Having found that summary judgment was not proper, we reverse, and remand for further proceedings. Accordingly, we do not reach the issues of damages or prejudgment interest, as a determination on these subjects will be dependent on the outcome of the proceedings in the trial court.

## CONCLUSION

We affirm the district court's order granting summary judgment in favor of Vanderheiden. Upon our review, we find genuine issues of material fact exist as to MMA's alleged breach of the MOU. We also find that MMA's counterclaim was not at issue at the

hearing and that it was improperly dismissed with prejudice. We reverse, and remand these matters for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.